**Irving P. KARLIN, Plaintiff,**

v.

**Warren E. AVIS and Avis Industrial Corporation, Defendants.**

No. 71-C-195.

United States District Court,
E. D. New York.

May 20, 1971.

Joseph Heller, New York City, for plaintiff; Jacob E. Heller, New York City, of counsel.

Royall, Koegel & Wells, New York City, for defendants; William S. Greenawalt, New York City, of counsel.

BARTELS, District Judge.

Defendants, Warren Avis and Avis Industrial Corporation (hereafter "Avis Industrial"), move to dismiss this removed diversity contract action upon the grounds that there is no *in personam* jurisdiction over either of them and, with respect to Warren Avis, that service of process was improper under New York law.

In his affidavit in opposition to defendants' motions the plaintiff, Irving Karlin, alleges the following facts.

In about September, 1968, Karlin spoke to Sidney McNiece, Treasurer, Secretary and Financial Vice President of Avis Industrial, with respect to a possible sale of Avis Industrial. McNiece suggested that the best way to effectuate the sale of the corporation would be a sale of the controlling stock interest, which was held by Warren Avis. Karlin claims that all conversations and meetings referred to in his affidavit occurred in New York. After speaking with some prospective buyers, Karlin met with McNiece and Thomas J. Ault, the president of Avis Industrial, on or about October 15, 1968, at 715 Park Avenue (an apartment leased by Avis Industrial). At this meeting Karlin was told by McNiece and Ault that the company needed cash, that Warren Avis would not put it up but that Warren Avis "offered through Mr. Ault and Mr. McNiece (as officers of Avis Industrial Corp. and as authorized agents for Mr. Avis) to sell the corporation by a purchase of a controlling interest of Avis stock." Specifically, Karlin was told at the meeting that Warren Avis had authorized McNiece to explore with Karlin, as finder, a prospect for the purchase of the Warren Avis stock. Karlin told McNiece that he was looking for a commission of 5% of the consideration involved in the deal, half of it to be paid by each side. McNiece and Ault asked Karlin to consider reducing their side's fee to a lower recognized formula, which Karlin agreed to accept and for which McNiece assured Karlin that he had the approval of Warren Avis. A meeting was then arranged, attended by McNiece, Ault, Karlin, and one Richard Weisinger, a prospect found by Karlin who represented a buying group. At that meeting it became clear that Avis Industrial would, in fact, need more cash. Consequently, a possible $2,000,000 equity financing was discussed. In addition to other meetings, a final meeting was held in New York City on January 9, 1969, attended by McNiece, Ault, Weisinger, and Warren Avis. At that meeting, not attended by Karlin, it was agreed that Warren Avis would sell all his Avis Industrial stock to Ultra Dynamics for $4,000,000 and that Avis Industrial would sell 49,744 shares of its treasury stock to Ultra Dynamics for $596,928. At the meeting Buyer and Seller agreed to set aside for Karlin a finder's fee of $132,000. The agreement was reduced to a formal writing in Detroit, Michigan, on or about January 16, 1969. The formal agreement recognized that Karlin was the finder entitled to be paid. Karlin was not paid.

Based upon this version of the facts, Karlin claims that he is entitled to a commission from Warren Avis on the sale of his personal stock and a commission from Avis Industrial on the sale of its treasury stock. His position is that the officers of Avis Industrial in negotiations with him acted for both Warren Avis and Avis Industrial. He claims that the ultimate goal was the sale of the corporation and that the only way to sell the corporation was to sell the controlling shares of its stock, which happened to be owned by Warren Avis. In addition, Karlin claims to have worked out a proposal for assisting the corporation to obtain working capital of $2,000,000, which proposal was not acted upon but which was partially substituted for by the sale of the treasury stock. Service of process upon Warren Avis was attempted on January 23, 1971, by leaving the summons at the 715 Park Avenue apartment with Warren Avis, Jr., the twenty-year-old college student son of Warren Avis.

Defendants claim that *in personam* jurisdiction was not secured over Avis Industrial or Warren Avis, and that service of process upon Warren Avis was defective. No claim is made that there was any irregularity in the service of the summons and complaint upon Avis Industrial on January 18, 1968. In adjudicating the issues of jurisdiction over the defendants raised by these facts, the court will attempt to discern the conclusion which it believes a New York court would reach were it presented with the same facts.

*Warren Avis*

### Long-Arm Jurisdiction

The initial question for consideration is whether there is personal jurisdiction over Warren Avis. The relevant statute is the N.Y. CPLR § 302 (a) (1), which provides that a court may exercise jurisdiction over a non-domiciliary for causes of action arising out of the transaction of business within the state by the non-domiciliary or his agent.[1] Since no affidavit submitted by the defendants disputes the crucial facts that a brokerage agreement was concluded in New York between Karlin and McNiece and Ault, acting as agents for Warren Avis, the case falls squarely within § 302(a) (1). The argument of Warren Avis that the final contract between Avis and Ultra Dynamics for the sale of Avis stock was consummated in Michigan, not New York, is entirely irrelevant since it is the finder contract, not the Ultra Dynamics contract, which gives rise to the instant cause of action. The negotiations for and conclusion of a contract within New York is unquestionably a transaction of business supporting long-arm jurisdiction. Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970). The instant case is clearly distinguishable from the situation present in Glassman v. Hyder, 23 N.Y. 2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968) [the most factually analogous case discovered by the court], where a New York broker entered into a verbal telephone brokerage contract with a New Mexican landowner who never entered New York and who never sent an agent into New York. In addition, and for the record, it should be noted that defend-

ants' position that jurisdiction will not attach where the contract is not consummated in the forum state is not supported by the authorities. Generally, it is held that substantial negotiations for a contract are a sufficient predicate for the assertion of New York long-arm jurisdiction even though the contract is culminated elsewhere. See e. g. Liquid Carriers Corporation v. American Marine Corporation, 375 F.2d 951, 956 (2d Cir. 1967); Potter's Photographic Applications Co., Inc. v. Ealing Corporation, 292 F.Supp. 92, 100–103 (E.D.N.Y. 1968); Northland Paper Company, Inc. v. Mohawk Tablet Company, 271 F.Supp. 763 (S.D.N.Y.1967); *cf.* National Gas Appliance Corporation v. AB Electrolux, 270 F.2d 472 (7th Cir. 1959), cert. denied, 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed. 2d 542 (1960).

### Service of Process

The remaining issue involving Warren Avis is whether service was properly made upon him. As stated above, the process server went to the apartment at 715 Park Avenue and left the summons with Warren Avis, Jr., a student at Brown University, who was staying at the apartment on one of his occasional social visits to New York City. A copy of the summons was then mailed to Warren Avis, Sr. at the aforesaid address.[2]

Section 308 of the CPLR was amended, effective September, 1970, to provide, in pertinent part, that service may be made upon a natural person by

"2. * * * delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be

---

1. Section 302(a) (1) provides, in pertinent part:
   "(a) * * * As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:
   1. transacts any business within the state * * *."

2. Joseph Heller, attorney for plaintiff, submitted an affidavit that service in this manner was attempted after an unsuccessful attempt to serve Warren Avis personally at 8120 East Jefferson Avenue, Detroit, Michigan. To the affidavit was attached a letter from the sheriff of Wayne County, Michigan, to the effect that a deputy had received information that Avis was in New York.

served and by mailing the summons to the person to be served at his last known address * * *."

The court must decide whether the requirements of this statute have been met. To resolve the initial question of whether the Park Avenue apartment is the dwelling place or usual place of abode of Warren Avis, it is necessary to review the history of the apartment. According to the affidavit of McNiece, the apartment was leased prior to January, 1970 by Avis Industrial as a place to stay, instead of a hotel room, for its officers and top employees while in New York. In addition, it was used from time to time for the conduct of business relating to Columbia Metal Products Co., Inc., a wholly-owned subsidiary of Avis Industrial. Karlin claims that beginning in January, 1970, Warren Avis took the apartment in his own name and paid the rent therefor. Karlin further claims that he made daily telephone calls to the apartment during the week prior to service of process and invariably received the answer that the caller should leave his name, phone number and a message and that Warren Avis would return the call. Avis does not deny the foregoing and, in fact, admits that he has "maintained" the apartment since January, 1970. He counters, however, with the argument that he is a resident and domiciliary of Michigan, with his residence at 8120 East Jefferson Avenue, Detroit, Michigan, and that he uses the apartment sporadically, in lieu of a hotel room, when he is in New York City, usually on the way to some other destination.

■ The task of determining whether this apartment was Warren Avis' dwelling place or usual place of abode is complicated by the paucity of case law interpreting these terms. See I Weinstein-Korn-Miller, New York Civil Practice par. 308.13. To fill this case law vacuum it is necessary to focus on the purpose of CPLR § 308(2). Professor McLaughlin, in his 1966 commentary to the CPLR, points out that the concept of *in*

*personam* jurisdiction "entails two distinct ideas: (1) a basis for jurisdiction; and (2) fair notice to the defendant." He states that where there is a valid predicate for jurisdiction, § 308(3) (formerly § 308(2)) addresses itself only to the element of fair notice, seeking to assure that process is served on the defendant "in a fashion calculated to apprise him that he is being sued, and to afford him an opportunity to litigate." See Entwistle v. Stone, 53 Misc.2d 227, 278 N.Y.S.2d 19 (Supreme Court, Onondago County, 1967). Here the court has found jurisdiction based upon the transaction of business in New York under CPLR § 302(a) (1); thus it is now concerned only with the notice-giving element of the statute. Centering attention, therefore, on this purpose, it seems clear that delivery of process to a person of a suitable age and discretion at an apartment such as the one here designated, is well calculated to give the defendant notice of the proceedings instituted against him.

■ Turning to a more literal approach, there seems no basis for concluding that the apartment was not the "dwelling place" of Warren Avis. In a highly mobile society it is unrealistic to interpret CPLR § 308(2) as mandating service at only one location where, in fact, a defendant maintains several dwelling places. *Cf.* Wright & Miller, Federal Practice and Procedure § 1096. Indeed, Warren Avis appeared to divide his time between Michigan, New York, Mexico and Europe. This common-sense approach at definition finds support in the case law. In Pickford v. Kravetz, 17 Fed.Rules Serv. 4d 121 case 1 (S.D.N.Y. 1952), the district court held that a hotel where a defendant stayed with his wife for approximately one week was a dwelling place within the meaning of rule 4d. See Rovinsky v. Rowe, 131 F.2d 687 (6th Cir. 1942); Skidmore v. Green, 33 F.Supp. 529 (S.D.N.Y.1940).

Warren Avis' connection with the Park Avenue apartment is considerably greater than a transient's nexus to a

hotel. The apartment is maintained in the name of Warren Avis, who has paid the rent for it since January, 1970. "'Dwell' is to be distinguished from 'reside' which means 'to dwell permanently or continuously' (Webster's Dictionary)." Rich Products Corporation v. Diamond, 51 Misc.2d 675, 678–679, 273 N.Y.S.2d 687, 691 (Supreme Court, Erie County, 1966). That Warren Avis is not a resident of New York and that he spends a considerable amount of time elsewhere does not mean that the apartment is not his dwelling place.

■ The two remaining questions, which involve the propriety of service, require less extended discussion. First, the court is of the opinion that 715 Park Avenue is as much Warren Avis' last known address as is the house in Michigan. Defendants argue that "last known address" is synonymous with "residence", citing Professor McLaughlin's 1970 Commentary to the CPLR. In the Commentary, McLaughlin points out that the former provision, respecting substituted service, required the mailing of the summons to the last known "residence", whereas under the present law it is to be made to the last known address. After stating the change, McLaughlin observes that "This change is not explained, and, in the context, the terms appear synonymous." This less than confident conclusion of synonymity is not shared by the court. On the contrary, the statutory change in wording appears to be a liberalization of the prior provision, or, more accurately, a change calculated to more realistically serve the notification purpose of the statute. What is a "last known address" depends upon the particular circumstances of each case and the extent to which it may be reasonably regarded as a place where a defendant is likely to receive a notice addressed to him. If an individual has an address that has been used by him and is known as such, the mailing of the summons to that address will serve the notice function of the statute. Thus the change in statutory language clearly suggests that jurisdiction should not be

denied upon the ground that the last known address was not the true residence of the defendant.

Second, it appears obvious that 20-year-old Brown University student, Warren Avis, Jr., is a person of suitable age and discretion within the meaning of the statute. Bradian v. Chavez, N.Y. L.J. April 23, 1968, p. 16, col. 6. Warren Avis does not argue to the contrary.

### Avis Industrial Corporation CPLR § 302(a) (1) Jurisdiction

The issue of jurisdiction over the corporate Avis is not easily resolved. Karlin's position with respect to § 302(a) (1) jurisdiction is that McNiece and Ault acted as agents not only for Warren Avis but also for Avis Industrial. As previously indicated, he claims that the ultimate goal sought to be achieved by both was the sale of Avis Industrial and that this could only be accomplished by the sale of Warren Avis' stock. In effect, he argues that the contract formula governing his commissions extended to any Avis Industrial stock sold to Ultra Dynamics through his efforts, including the treasury stock. Avis Industrial replies that Karlin had nothing to do with proposing the sale of the Avis Industrial treasury stock, which was first seriously considered in Detroit on January 15th and 16th, and adds that there is no specific allegation in the complaint that Avis Industrial agreed to pay any finder's fee.

■ This summary of the opposing contentions demonstrates that the same facts which will determine whether Karlin has a cause of action against Avis Industrial will also be decisive in determining whether Avis Industrial has transacted business in New York. In particular, both issues will involve a careful analysis of exactly what hats McNiece and Ault were wearing in their negotiations with Karlin. Liberally construed, Karlin's complaint and affidavit do charge Avis Industrial with transacting business in New York through the agency of its officers, McNiece and Ault. This precludes the present granting of

summary judgment in favor of Avis Industrial on the jurisdictional point. While the court might order a hearing upon this issue in advance, such a course would be tantamount to ordering a trial of the substantive issues of the case. The sounder course is to presently deny the motion for judgment with leave to renew when the facts are adduced at the joint trial. The trial will also serve to clarify the issue of the substantiality of the New York negotiations which now divides the parties.

### *CPLR § 301 Jurisdiction*

Finally, Karlin makes the additional argument that Avis Industrial was doing business in New York at the relevant times because Columbia Metal Products Co., Inc., Avis Industrial's New York subsidiary, was a mere corporate shell, with no mind, will or existence of its own. In short, he claims that Columbia Metal Products' corporate veil ought to be pierced. Avis Industrial argues that its subsidiary was an independent entity and, in any event, ceased doing business in September, 1968. Karlin denies the latter fact contending that it continued doing business several months into 1969.

The court notes that piercing of the corporate veil, if only for jurisdictional purposes, is a drastic approach authorized only in the most extreme circumstances. In the New York courts it is generally eschewed except where a wholly-owned subsidiary is performing services for the parent in New York, which are essential for the parent's other business activities. See Frummer v. Hilton Hotels International, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967). The factors mentioned by Karlin as justifying piercing the veil do not seem to demonstrate a degree of control much greater than a parent usually maintains over a wholly-owned subsidiary. In all events, since the court is not dismissing the case against Avis Industrial in view of the possible § 302(a) (1) jurisdiction, there is no necessity to conclusively rule upon this theory at this time.

### *Failure to Complete Service*

Although not specifically raised as a ground for dismissal, defendants assert that Karlin has failed to file papers in the New York courts. Failure to file proof of service is not, however, a jurisdictional defect. See Gordon v. Ellender, N.Y.L.J. October 20, 1969, p. 2, col. 2. Molyneaux v. Sevilla, 22 Misc.2d 450, 194 N.Y.S.2d 417 (1959).

Accordingly, the motions to dismiss, are hereby denied.

So ordered.