■ Elva Mangold, Appellant, v Helen Neuman, Respondent. — Order of Supreme Court, New York County (Ryp, J.), entered August 19, 1981, which, *inter alia,* granted defendant's motion to confirm the referee's report and granted defendant's motion to dismiss the complaint upon grounds of lack of in personam jurisdiction of defendant, is affirmed, with costs. The report made by the referee finding that defendant-respondent was not a resident of New York under CPLR 308 (subd 2) was amply supported by the facts in the record. Concur — Sandler, J. P., Silverman and Asch, JJ.

Bloom and Lynch, JJ., dissent in a memorandum by Bloom, J., as follows: Plaintiff and defendant are sisters. The action is one to establish a constructive trust in the estate of Harry Publicker, the father of both parties. The complaint alleges that Harry died a resident of Chester, Pennsylvania, on March 15, 1951. Thereafter a document purporting to be his will was offered for probate. That document left nothing to plaintiff and, by consequence, she filed objections to its probate. Subsequently, and in or about 1953, the parties, together with their mother, met in Florida to discuss a possible settlement of the family dispute. Although the precise terms of the compromise purportedly reached are not entirely clear, it is averred that "defendant stated that she was in fear of her husband, Si Neuman, and promised that upon the death of her husband, Si Neuman, the defendant would compensate the plaintiff for the one-third of her parents' estates that were devised and left to defendant as a result of the fraud, undue influence and physical and mental threats made by defendant's husband, Si Neuman, so that the plaintiff would inherit equally with her borther and her sister, the defendant herein". Neuman has since died. It is to enforce this alleged agreement by imposing a constructive trust in so much of Harry's estate as defendant, allegedly, agreed to give plaintiff, that this action is brought. Harry Publicker was, apparently, a very wealthy man. During his lifetime he was chairman of the board of Publicker Industries, Inc., a publicly held Pennsylvania corporation which had offices in Greenwich, Connecticut, and in New York City. Upon Publicker's death he was succeeded as chairman of the board by his son-in-law, Seymour Neuman. Neuman, in turn, was succeeded as chairman, upon his death, by his wife, the defendant. The precise issue submitted to us for determination is whether defendant was properly brought within the ambit of the jurisdiction of this State's courts. Defendant is domiciled in Pennsylvania. She possesses a 35-room house in Wayne, Pennsylvania, set on a 68-acre tract of land, which, subsequent to the death of her husband in 1977, was closed down. Presently, it is occupied solely by a caretaker. Her principal place of abode is an apartment at the Rittenhouse Regency Hotel in Philadelphia. Additionally she maintains, or did maintain, a

house in Palm Beach[1] and, at the times pertinent to this action, an apartment at the Sherry Netherland in New York City. The examination of defendant before trial of defendant indicated that this apartment was maintained by her under a lease for one year and that the monthly rental therefor was $6,000. Additionally, it indicated that she possesses a condominium in Long Port, New Jersey. Defendant moved to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 8) on the ground that the court did not have jurisdiction over her person on two grounds: first she asserted that her contracts with the State were insufficient to establish the requisite basis for jurisdiction and, secondly, that service had not been made properly upon her. Special Term referred these issues to a referee for hearing and report. In addition to the facts set forth above the hearing before the referee established that a number of efforts had been made to serve defendant at the Sherry Netherland. These had proved unsuccessful. Accordingly, on February 13, 1980, the process server delivered a copy of the summons and complaint to the desk clerk at the Sherry Netherland and on February 15, 1980 he mailed an additional copy, addressed to defendant at that address. The referee found that "[t]he degree of use of the apartment of [sic] the Sherry Netherland Hotel by the defendant, even though it was rented by her, is not shown to be of a degree as [sic] to establish it, at the time of the alleged service or at any time, either as a dwelling place, usual place of abode, or last known residence of defendant". Accordingly, he concluded that service was improper and recommended vacatur thereof. Defendant moved to confirm the report while plaintiff cross-moved to disaffirm. Special Term granted the motion to confirm and denied the cross motion. We think that this was improper. We start with the issue of the power to subject the person of defendant to the process of the courts of this State. Whatever may once have been the rule (see *Pennoyer v Neff,* 95 US 714), it is now too settled for dispute that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" (*International Shoe Co. v Washington,* 326 US 310, 316, citing *Milliken v Meyer,* 311 US 457, 463). Here, it is plain that defendant's presence in this State was not casual or incidental. Although the proof indicates that she used it only approximately twice a month and then only when her presence was required either in New York City or in Greenwich in connection with corporate business, she maintained and paid for the apartment herself. To provide for her comfort while she was present there she moved her piano and other personal items into the Sherry Netherland apartment. In sum, she was constructively present there throughout the entire year even though her actual presence was for limited periods of time only. Her presence established the existence of such contacts with this State that to find that she subjected herself to the jurisdiction of our courts does not offend "traditional notions of fair play and substantial justice" (*Milliken v Meyer,* 311 US 457, 463, *supra*). The second issue is somewhat murkier in its overtones. Service was effected pursuant to CPLR 308 (subd 2). That provision requires that personal service upon a natural person be made by delivery "within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode * * * and by mailing [of] the summons to the person to be served at his last known residence". Here, service was made by delivery of a copy of the summons and complaint to the desk clerk and by mailing an additional copy to defendant at the Sherry Netherland. It is contended that the Sherry Netherland was not defendant's last known residence, and, therefore, service was not in compliance with the statute. At the outset we note the

---

1. Defendant contends that the Palm Beach mansion has been sold.

somewhat puzzling difference in the statute's language. Delivery is to be made at the *"actual * * * dwelling place* or *usual place of abode"; mailing* is to be made to defendant's *"last known residence"* (emphasis supplied). We are not unaware that the Court of Appeals has determined the two are not synonymous (*Feinstein v Bergner,* 48 NY2d 234). In so doing, however, it placed greater emphasis upon the "actual" dwelling place or "usual" place of abode as more likely to give notice to a defendant of the pendency of the lawsuit than the "last known" place of residence. In that case "nail and mail" service under CPLR 308 (subd 4) was involved. However, the court discussed the parallel provisions in subdivisions 2 and 4 and struck down the service because the "nailing" (the equivalent of the delivery in this case to a person of suitable age and discretion), had been at defendant's *last known* dwelling place rather than at his *actual* dwelling place. Here, there is no question but that delivery had been to one of defendant's numerous dwelling places or places of abode. In a case singularly like this one (*Karlin v Avis,* 326 F Supp 1325) the Federal court sustained the validity of the service. There, the defendant, domiciled in Michigan, was required to come to New York from time to time on corporate business. Originally, the corporation leased an apartment at 715 Park Avenue for his use while in the city. Subsequently, and when the corporation discontinued the lease of the apartment, he took it in his own name because he found it more convenient than a hotel room. The court held that leaving process at that apartment with a person "of suitable age and discretion" and mailing it to him at the address[2] met all the requirements of the statute. We are of the opinion that the term "residence" is intended to be synonymous with "address" and that, as indicated by the Judicial Conference, no substantive change was intended to be wrought to the amendment. Accordingly, we find *Karlin* persuasive authority for the proposition that service of process in the manner here indicated complied with the law. We note that upon the argument we were informed that plaintiff has instituted an action in Pennsylvania for the same relief. This was done in order to preserve plaintiff's rights in the event that service in the matter before us was held to be defective. However, the fact that plaintiff will not be without remedy in the event of a dismissal should not influence our determination of whether service was properly made in this case. We would, therefore, reverse the order of Special Term, deny the motion to confirm the report of the referee and grant the cross motion to vacate and set it aside, and hold that defendant is subject to the jurisdiction of our courts and that service was properly effected upon her.

---

2. At the time the statute required mailing to the last known "address". By amendment adopted in 1971 the word "address" was changed to read "residence". However, the Judicial Conference which sponsored the amendment, noted that this change was made so that subdivision 2 would be stylistically consistent with subdivision 4 and that no substantive change was thereby intended (Seventeenth Annual Report of NY Judicial Conference, 1972, p 25).