■ CELIA ROLDAN, Appellant, v DUDLEY E. THORPE, Respondent.—In an action to recover damages for personal injuries, the plaintiff appeals from an order of the Supreme Court, Kings County (De Matteo, R.), dated September 20, 1984, which, after a hearing, granted the motion of the defendant by his insurer, Allstate Insurance Company, to vacate a default judgment, entered November 9, 1979, in favor of the plaintiff and against the defendant, and dismissed the complaint.

Order reversed, on the law, without costs or disbursements, and the motion to vacate the default judgment entered November 9, 1979 in favor of the plaintiff and against the defendant denied. The findings of fact are affirmed.

In granting the motion of the defendant's insurer to vacate a default judgment dated November 9, 1979 in favor of the plaintiff and against the defendant, the Referee held that the service of process in the instant case did not satisfy the requirements of CPLR 308 (2) which provides in pertinent part as follows:

"§ 308. Personal service upon a natural person.

"Personal service upon a natural person shall be made by any of the following methods * * *

"2. by delivering the summons within the state to a person of suitable age and discretion at the actual * * * dwelling place or usual place of abode of the person to be served".

We disagree with the conclusion of the Referee.

The uncontradicted evidence at the traverse hearing indicated that on February 21, 1979, the date of service of process, the defendant lived at 1331 St. Lawrence Avenue in The Bronx. The house located at that address was semiattached, and a locked gate, the key to which was possessed by the defendant, ran across the driveway on the unattached side. The house itself was described by the process server as "pri-

vate" and "small", and one which "might have had two families in it". Although there were a bell and letter boxes near the front door of the house, there were no names on the bell or the letter boxes. Due to these physical features of the house, the process server could not ascertain whether the defendant lived in a separate portion of the premises.

In response to the process server's ringing of the bell of the front door, the landlord of the house came down from his second-floor apartment, in which he resided, to the first floor, opened the front door and spoke to the process server, who remained outside on the stoop of the house.

The process server testified that the landlord told him that the defendant lived with him, and, after learning that the process server had process for the defendant, the landlord stated "I'll see to it that he gets it". According to the landlord, the conversation was as follows: "A. I don't remember what date or what. I remember once I was there and one morning the doorbell rang. I went downstairs and a gentleman asked me for Mr. Thorpe. He was not there. He asked me if I could give him—he had an envelope in his hand, a white envelope. He said, 'Could you give Mr. Thorpe for me.' I said sure. He said to me, 'Are you the owner of this building?' I said, 'Yes', and he asked my name, which I told him, and he left".

The record at the traverse hearing also indicated that the first floor of the home was rented by a tenant and an apartment in the basement was rented by the defendant. Although there were a total of three modes of access to the defendant's basement apartment, two of those modes of access were through doors on the side and rear of the first-floor level of the house respectively, beyond the locked gate and further down the driveway. The remaining mode of access to the defendant's apartment was through the front door of the house, from which the landlord appeared on the day in question.

Initially, we conclude that the landlord herein qualifies as a person "of suitable age and discretion" within the contemplation of CPLR 308 (2). As the court stated in *City of New York v Chemical Bank* (122 Misc 2d 104, 108-109): "The person to whom delivery is made must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant. Thus, delivery to adult relatives, employees, co-workers and apartment-house doormen as persons of suitable age and discretion, has been sustained. (See, e.g., *Karlin v Avis*, 326 F Supp 1325 [20-year-old college student]; *Bossuk v*

*Steinberg,* 58 NY2d 916 [teen-age children]; *Aspinall's Club v Aryeh,* 86 AD2d 428 [spouse]; *Oxhandler v Sekhar,* 88 AD2d 817 [doctor's receptionist-secretary]; *Matter of Betzler v Carey,* 109 Misc 2d 881, affd 91 AD2d 1116 [employee]; *duPont, Glore Forgan & Co. v Chen,* 41 NY2d 794, on remittitur 58 AD2d 789 [apartment-house doorman]" *(see also,* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C308:2, p 208).

The crucial issue in the case at bar is whether the landlord was served at the "actual dwelling place" or "usual place of abode" of the defendant.

In *duPont, Glore Forgan & Co. v Chen* (41 NY2d 794, *on remittitur* 58 AD2d 789, *supra),* personal jurisdiction over a tenant in a large apartment building was obtained, pursuant to CPLR 308 (2), by service of process in the lobby upon the doorman, who refused the process server access to the defendant's apartment, apparently on the latter's instructions. Although the court in *duPont, Glore Forgan & Co. v Chen (supra,* pp 797-798) recognized the general rule that the "actual dwelling place" or "usual place of abode" of a tenant in a multiple dwelling is the apartment of the tenant *(see, Family Fin. Corp. v Canuelas,* 94 Misc 2d 241, 242; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C308:2, p 207), it nevertheless upheld the service in the lobby upon the doorman, stating: "We also conclude that it cannot be held as a matter of law that delivery of the papers in the lobby of the apartment house in the circumstances disclosed here was not delivery 'at the actual dwelling place' of defendants. It is not disputed that the defendants resided in apartment No. 4A. In our analysis if a process server is not permitted to proceed to the actual apartment by the doorman or some other employee, the outer bounds of the actual dwelling place must be deemed to extend to the location at which the process server's progress is arrested. In this instance that location was the lobby of the apartment house".

In the case at bar, the process server was not actually denied access to the defendant's apartment as he was in *duPont, Glore Forgan & Co. v Chen (supra).* Nevertheless, in the instant case, the house wherein defendant lived was a small private house, and the defendant's apartment therein was not identifiable in any way. Moreover, two modes of access to the defendant's basement apartment, i.e., through doors on the side and rear of the first-floor level of the house, were situated beyond a locked gate, the key to which was possessed by the defendant. Under these particular circum-

stances, we conclude that the "outer bounds" of the defendant's "actual dwelling place" extended to the front door of the house (the third mode of access to the defendant's basement apartment) where the process server was met by the landlord *(duPont, Glore Forgan & Co. v Chen, supra; cf. Marrero v Wolffe,* 60 AD2d 596). Accordingly, service of process upon the defendant's landlord at that location satisfied the requirements of CPLR 308 (2) and personal jurisdiction over the defendant was obtained thereby.

We have reviewed the remaining arguments raised by the defendant's insurer in support of its motion to vacate the default judgment and find them to be without merit *(see, Freccia v Carullo,* 93 AD2d 281). Lazer, J. P., Mangano, Brown and Kooper, JJ., concur.