[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a summary process action, seeking immediate possession. Many of the allegations of the complaint are found to be proven: it is found that the plaintiff Ray Tsukroff, along with Keith Stone, was at all pertinent times the owner of the premises at 35 Dally Farms Road in Windsor. In March, 1993, the plaintiff entered into an oral month-to-month lease with the defendant Ray Fordham; the rent was $200 per month. The premises were a single family house in Windsor; the defendant Fordham had a bedroom as well as the use of the living areas of the house. No rent payments have been made since June, 1995.
In 1994, the plaintiff and the defendant entered into an investment in residential real estate in Hartford. The plaintiff made the decisions and did the bookkeeping. The defendant claims that he stopped paying rent at least partly because he did not receive any profits from the real estate investment. The plaintiff testified that there were no profits to distribute; further, there was an understanding, at least on his part, that there would be no distribution of profits for the first five years of the investment. Rather, any earnings would be channeled into capital improvements. In any event, it is found that there was no agreement to "wash" any earnings from the investment in return for rent, and that rent was in fact not paid.
In April, 1996, the defendant went to Georgia. He left his belongings in his room at the subject premises in Windsor, and he did not move to Georgia in the sense of abandoning Connecticut. The plaintiff had discussions with the defendant about the defendant's plans, and the plaintiff, at least, felt it was necessary to clean up the financial affairs with the defendant. He told the defendant that he was going to institute formal eviction proceedings.
A notice to quit was issued on July 1, 1996, and service was purported to be made on July 2, 1996. The notice to quit listed three grounds for eviction: lapse of time, non-payment of rent, and "illegal conduct on premises". The court ruled during trial that the third ground, unlawful conduct, was not stated with any specificity at all, and therefore was inadequate notice pursuant to Jefferson Garden Associates v. Greene, 202 Conn. 128 (1987). The notice to quit is also insufficient as to lapse of time: because the tenancy is month-to-month and the stated quit date is before the end of the month in which the notice to quit was served, the tenancy would not have lapsed at the quit date. The CT Page 5319 notice to quit is therefore inadequate on the ground of lapse of time. See, e.g., Archembeault v. Alverides, H-115, No. SPN-7908-651-BR (Housing Session, 1979) (Spada, J.); Duprey v.Bourgue, H-514, No. SPH-8310-20852-MR (Housing Session, 1984) (Aronson, J.). The ground of non-payment is sufficiently stated in the notice to quit, and the allegations of the complaint support relief on that ground.
The defendant, however, asserted three special defenses. The first alleges that the notice to quit was defective, and that the court therefore lacks jurisdiction. The second alleges that the premises did not have the appropriate certificate of occupancy, and the third alleged that there were no smoke detectors. As to the second and third defenses, it is found that the defendant has not sustained his burden of proof: no evidence was introduced on the issue of whether the town of Windsor required occupancy certificates, and no credible evidence was introduced on the issue of whether the smoke detector was functional or not.
The first defense, claiming a defective notice to quit, is more troublesome. Because the notice to quit provides the subject matter jurisdiction for the court, a defect in service of the notice to quit can be raised at any time. See, e.g., LinwoodRealty Co. v. Melendez, H-483, No. SPH-8309-20427 (Housing Session, 1983) (Aronson, J.). The defendant claims that abode service in any manner other than insertion under his individual bedroom door is insufficient. Prior to the defendant's trip to Georgia, the living arrangement was such that the defendant had access to, and used regularly, the living areas of the house in addition to his bedroom There was no evidence of any outside door from the defendant's bedroom, and no evidence that the bedroom door was marked with any number or other identifying marking.
Although there is some authority to the effect that service of a notice to quit is governed by standards less rigorous than those governing service of process in general; see, e.g.,Dell'Aera v. Morawski, H-592, No. SPN-8410-6254 B.R. (Housing Session 1984); the greater weight of authority suggests that the standards are identical. See, e.g., Linwood Realty Company v.Melendez, supra, and authority cited within. The narrow issue presented, then, is whether service of the notice to quit at the front door of a private residence, where the defendant occupies a room in the residence, is sufficient to confer jurisdiction.
Whether a particular method of abode service is sufficient CT Page 5320 depends on the probability that the person intended to be served will receive notice. Federation Square v. Kaplan, H-615, No. SPH-8410-25567-WH (Housing Session 1985) (Aronson, J.); Pozzi v.Henry, 24 Conn. Sup. 488, 490 (1963); Smith v. Smith, 150 Conn. 15,20 (1962). While the fact of actual notice does not necessarily conclude the issue, it is a factor which "weighs heavily in favor of the plaintiff". Gondek v. Haugwitz-Reventlow,1991 Ct. Sup. 5478 (Wagner, J.). Where the defendant has received actual notice, the statutory provisions for substituted service should be liberally construed. Shawmut Bank v. Cook,1995 Ct. Sup. 1430 (Walsh, J.); Gondek, supra; Annot., 32 A.L.R 3d 112. If, on the other hand, substitute service is clearly insufficient as a matter of law, then actual notice does not necessarily "save" the service. e.g., U.S. Guarantee Co. v. Giarelli,14 Conn. Sup. 400 (1947).
In a multi-unit dwelling, service left in a common area is insufficient where there are discrete living units with separate entrances. Clover v. Urban, 108 Conn. 13 (1928); Cagno v. Kaelin,138 Conn. 341 (1951). The situation at hand is somewhat different from service in an apartment building, as in Clover, or a hotel room, as in Plonski v. Halloran, 36 Conn. Sup. 335 (1980). Here, the defendant and the other occupants shared most of the living quarters, and the bedrooms, apparently looking like ordinary bedrooms in a single family private dwelling, were not distinctly separate living units so identified. There were apparently no separate entrances.
Other jurisdictions have found service in such a situation sufficient. In Roldan v. Thorpe, 499 N.Y.S.2d 114, 117 App.Div. 2
d 790 (1986), it was held by the Appellate Division that where the defendant lived in a basement apartment of a private home, and the apartment was not identifiable from the outside, service by delivery at the front door of the house was adequate. InEdward Hines Lumber Co. v. Smith, 29 Ill. App.2d 35,172 N.E.2d 429 (1961), service on a person who rented a room in a dwelling house was properly effected by securing a copy to the front door.[1] See also Annot., 32 A.L.R 3d 112, § 24. On the unusual facts of this case, then, service was not clearly insufficient, and in light of the absence of any prejudice, the special defense alleging defective notice is found not to be proved.
Accordingly, judgment may enter for the plaintiff. CT Page 5321
Beach, J.