■ WASHINGTON MUTUAL BANK, Formerly Known as WASHINGTON MUTUAL BANK, FA, Respondent, v EDWARD MURPHY, Appellant, and PAUL LUCIANO, Respondent, et al., Defendants.
[10 NYS3d 95]—

In an action to foreclose a mortgage, the defendant Edward Murphy appeals from so much of an order of the Supreme Court, Suffolk County (Cohalan, J.), dated January 18, 2012, as, upon a decision of the same court dated November 16, 2011, made after a hearing, denied that branch of his motion which was pursuant to CPLR 5015 (a) (4) to vacate a judgment of foreclosure and sale of the same court entered August 19, 2008, upon his failure to appear or answer the complaint, and thereupon to dismiss the complaint.

Ordered that the order is reversed insofar as appealed from, on the law and the facts, with costs, and that branch of the motion of the defendant Edward Murphy which was pursuant to CPLR 5015 (a) (4) to vacate the judgment of foreclosure and sale, and thereupon to dismiss the complaint insofar as asserted against him, is granted.

In 2002, the defendant Edward Murphy purchased real property situated in the hamlet of Noyack, in the County of Suffolk (hereinafter the Noyack property). To facilitate this purchase, he obtained, from the plaintiff, a loan secured by a mortgage on the Noyack property.

Paragraph 15 of the mortgage provided that any notice to Murphy would be sent to the address of the Noyack property unless Murphy gave notice to the plaintiff of a different address. Further, paragraph 15 required Murphy to give the plaintiff prompt notice of any change of address, and specified that "[t]here may be only one designated notice address under [the mortgage] at any one time."

It is undisputed that, in March 2003, pursuant to paragraph 15 of the mortgage, Murphy duly informed the plaintiff that all correspondence and monthly statements pertaining to the Noyack property were to be addressed to him at his primary residence, which was located on Reade Street in Manhattan. Accordingly, the plaintiff thereafter sent all correspondence, including monthly statements pertaining to the Noyack property, to Murphy at the Reade Street address.

Murphy did not make the monthly installment payment that was due on February 1, 2007, or any payment due thereafter. The plaintiff sent a letter, dated February 17, 2007, to Murphy at his Reade Street address with respect to Murphy's failure to make payments on the mortgage for the Noyack property, and offered assistance with loan modification.

On May 25, 2007, the plaintiff commenced this action to foreclose the subject mortgage by filing the summons and complaint with the Suffolk County Clerk.

According to the affidavit of service, a copy of the summons

and complaint was served at the Noyack property upon " 'JOHN DOE' (NAME REFUSED), CO-TENANT" on May 26, 2007, which was the Saturday of Memorial Day weekend. A separate copy of the summons and complaint was thereafter mailed to Murphy at the Noyack property on May 30, 2007. Upon Murphy's failure to appear or answer the complaint in this action, the plaintiff moved for, and was granted, leave to enter a default judgment against him.

Prior to the entry of the judgment of foreclosure and sale, the plaintiff sent a letter, dated September 13, 2007, to Murphy at the Reade Street address, stating that Murphy had been "identified as a potential candidate" for the plaintiff's "Loss Mitigation Program." In the letter, the plaintiff explained that the program was designed, in part, to help Murphy prevent the possible loss of his vacation home by giving him "the opportunity to explore available alternatives to foreclosure to help resolve [his] delinquency situation," and provided him with a loan workout package. The letter did not refer to the fact that copies of the summons and complaint commencing this action to foreclose the subject mortgage had been purportedly served upon Murphy solely at the address of the Noyack property.

The plaintiff sent a subsequent letter, dated June 15, 2008, also prior to the entry of the judgment of foreclosure and sale, in which it acknowledged that it had been contacted by Murphy, and continued to offer help to Murphy. This letter was sent to the Reade Street address. Similar to the preceding letters sent by the plaintiff to Murphy, this letter was silent as to the purported service of copies of the summons and complaint upon Murphy and the pendency of this action.

Another letter, dated August 14, 2008, was sent by the plaintiff to Murphy at the Reade Street address, reiterating that he was a potential candidate for the plaintiff's Loss Mitigation Program. This correspondence did not refer to the ongoing foreclosure litigation.

A judgment of foreclosure and sale was entered on August 19, 2008, and the Noyack property was sold at auction on November 12, 2008. A copy of the judgment of foreclosure and sale and, thereafter, a notice to vacate the Noyack property, was mailed to Murphy at the Noyack property. No notice was sent to the Reade Street address.

Thereafter, Murphy received a letter, dated December 31, 2008, at the Reade Street address, from JPMorgan Chase Bank, National Association (hereinafter JPMorgan), doing business as Washington Mutual Bank, advising him that Washing-

ton Mutual Bank, the servicer of the loan, had gone out of business, and that some of its assets had been acquired by JPMorgan, including the right to service Murphy's loan. The letter also stated that JPMorgan might be able to help Murphy "bring [his] loan current and avoid foreclosure even if [he could not] pay [his] outstanding balance in full." The letter advised Murphy to call "right away" to learn how JPMorgan could assist him, and that he could also be eligible for home ownership counseling through the United States Department of Housing and Urban Development network of nonprofit counseling organizations. The letter informed Murphy of the total debt outstanding on his loan as of the date of the letter. The letter contained no notice of the entry of the judgment of foreclosure and sale that the plaintiff had previously obtained.

In February 2009, JPMorgan commenced a separate proceeding in the Justice Court of the Town of Southampton against Murphy, seeking to obtain possession of the Noyack property. The petition alleged that JPMorgan had acquired title to the Noyack property via foreclosure, and that a 10-day notice to terminate occupancy and a referee's deed had been served upon Murphy via "affix and mail" service, without specifying where or when Murphy was purportedly served with those documents. That petition was granted on default on March 11, 2009. Pursuant thereto, a dispossession notice was posted at the Noyack property by the Sheriff of Suffolk County on April 16, 2009. JPMorgan conveyed the property to the defendant Paul Luciano on October 13, 2009, pursuant to a bargain and sale deed.

In October 2009, Murphy moved, by order to show cause, inter alia, pursuant to CPLR 5015 (a) (4) to vacate the judgment of foreclosure and sale on the ground that he was never served with process in this action, and thereupon to dismiss the complaint. In support of his motion, Murphy submitted an affidavit, in which he stated that his primary residence since 1994 had been at the Reàde Street address, except for a brief period in 2002. He explained that, since 2003, the Noyack property had only been used as a summer house. He also stated that, on May 26, 2007, the date that service of process was allegedly effectuated, the Noyack property was not his actual place of business, place of residence, dwelling place, or place of abode.

According to Murphy, since March 2003, the plaintiff had always sent him correspondence regarding the Noyack property to the Reade Street address, and all other bills related to the Noyack property, including those for electric power, cable

television, homeowner's insurance, and maintenance of the tennis court, were likewise sent to the Reade Street address. In addition, Murphy established that his driver's license listed the Reade Street address as his residence, and that he was registered to vote in Manhattan on the basis of the Reade Street address.

Further, Murphy contended that he was out of the country from May 18, 2007, through May 29, 2007, which was the time when copies of the summons and complaint were allegedly served at the Noyack property. He claimed that, contrary to the representation made in the affidavit of service of the plaintiff's process server, he had never had any cotenants residing at the Noyack property.

Both the plaintiff and Luciano opposed the motion. The plaintiff argued that service upon Murphy was effectuated by delivering a copy of the summons and complaint to a person of suitable age and discretion at Murphy's dwelling place or usual place of abode, and then mailing a copy to Murphy at his last known residence. Luciano contended that Murphy's claim that the plaintiff failed to properly serve him with process was only relevant to potential money damages, and not any cause of action to foreclose a mortgage asserted against him in his capacity as a bona fide purchaser of the Noyack property.

In an order dated December 30, 2010, the Supreme Court, inter alia, held Murphy's motion in abeyance, pending a hearing to determine the validity of service of process.

At the hearing to determine the validity of service of process, the plaintiff called the process server as its only witness. The process server testified that he served a copy of the summons and complaint and a brochure entitled "Help for Homeowners in Foreclosure" upon Murphy at the Noyack property. The process server testified that, on Saturday, May 26, 2007, when he appeared at the Noyack property to serve process, a man answered the door and told him that Murphy was in Monaco that weekend, and would not be back until Tuesday, May 29, 2007. The process server further testified that he advised the man who opened the door that he had papers pertaining to the foreclosure on the Noyack property, and asked if the man would accept them. The process server recalled that the man did accept two sets of the papers, but refused to give his name. He stated that he assumed that the man was Murphy's cotenant, since the man indicated that he was staying at the property.

The process server testified that, on Wednesday, May 30, 2007, he mailed a copy of the summons, complaint, and the brochure to Murphy at the Noyack property. He recalled that

the envelope containing those documents was never returned to him as undeliverable.

During cross-examination, the process server testified that the plaintiff's lawyers provided him with the address to which he was to mail a copy of the summons and complaint. When asked if the plaintiff's law firm had informed him that the Noyack property was Murphy's "residence," the process server responded "[t]hat is correct" and "[y]es, they did." In response to a question about whether he undertook any inquiry into whether the Noyack property was Murphy's "address," the process server answered that, when he served the papers upon the man at the Noyack property, that person had stated that the Noyack property was owned by Murphy, and that it was Murphy's property.

Murphy testified on his own behalf at the hearing. He stated that he was a resident of Manhattan, having lived at the Reade Street address as his primary residence since 1994. He explained that he had purchased the Noyack property in 2002 to spend summers there, and as an investment. He stated that, at one point, he thought about making the Noyack property his primary residence, but realized that it was not a feasible option to commute on a daily basis from Noyack to Manhattan, where he worked. Murphy asserted that he never claimed the Noyack property as his primary residence for tax purposes. He testified that his driver license designated the Reade Street address as his residence, and that his voter registration was also based on that address.

Murphy explained that he used the Noyack property "on weekends in the summer primarily," meaning virtually every weekend between Memorial Day and Labor Day. He occasionally let people stay at the property even when he was not present. He asserted that he very rarely went to the Noyack property outside of that time period.

Murphy also testified that he received monthly statements for the Noyack property from the plaintiff at his Reade Street address. He explained that he had directed the plaintiff to send the monthly mortgage statements to his Reade Street address since that "is where [he] lived." He stated that he did not receive any bills at the Noyack property, and that the telephone and cable television bills for the Noyack property were sent to his Reade Street address. He also stated that, when he stopped making mortgage payments upon losing his job, he received multiple notices from the plaintiff about his delinquent payments at his Reade Street address.

Murphy stated that he was not aware in 2007 that a foreclo-

sure action was imminent, since he kept receiving correspondence from the plaintiff offering different programs that would assist him in working out his difficulties in keeping current on his mortgage. He explained that these notices did not mention that an action for foreclosure had been commenced, which led him to believe, as late as December 2008, that he could still become current on his mortgage obligation.

Murphy testified that he was not present at the Noyack property during Memorial Day weekend in 2007. He believed that there were people staying at the house during that weekend. He also testified that he was not served with a copy of the summons and complaint on May 26, 2007, and never received a copy at his Reade Street address.

On cross-examination, Murphy testified that cable television service and electricity were kept on at the Noyack property throughout the year, and that the post office delivered mail there. Murphy testified that he did not receive important mail at the Noyack property, but only received junk mail at that address, so that he "almost never" checked the mailbox. However, he did acknowledge that if mail were addressed to him at that address, he would receive it. Murphy stated that, despite the fact that the Noyack property was kept open throughout the year, he would very rarely go out there during the winter, fall, or spring. He explained that it was only during the period from Memorial Day to Labor Day that he would travel to the Noyack property virtually every weekend. He also acknowledged that he had in the past taken a week off in the summer and spent it at the Noyack property, although that occurred on an average of less than once a year.

In an order dated January 18, 2012, the Supreme Court, inter alia, denied that branch of Murphy's motion which was pursuant to CPLR 5015 (a) (4) to vacate the judgment of foreclosure and sale, and thereupon to dismiss the complaint. Murphy appeals, as limited by his brief, from so much of the order dated January 18, 2012, as denied that branch of his motion which was to vacate the judgment of foreclosure and sale, and thereupon to dismiss the complaint in this action. We reverse the order insofar as appealed from.

Pursuant to CPLR 5015 (a) (4), "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person . . . upon the ground of . . . lack of jurisdiction to render the judgment or order." The court does not have personal jurisdiction over a defendant when a plaintiff fails to properly effectuate service of process (*see Emigrant Mtge. Co., Inc. v Westervelt*, 105 AD3d

896, 896-897 [2013]; *Krisilas v Mount Sinai Hosp.*, 63 AD3d 887, 889 [2009]). In those instances in which process has not been served upon a defendant, all subsequent proceedings will be rendered null and void (*see Emigrant Mtge. Co., Inc. v Westervelt*, 105 AD3d at 897; *Krisilas v Mount Sinai Hosp.*, 63 AD3d at 889; *see also Prudence v Wright*, 94 AD3d 1073, 1074 [2012]).

"Service of process must be made in strict compliance with statutory 'methods for effecting personal service upon a natural person' pursuant to CPLR 308" (*Estate of Waterman v Jones*, 46 AD3d 63, 65 [2007], quoting *Macchia v Russo*, 67 NY2d 592, 594 [1986]; *see Emigrant Mtge. Co., Inc. v Westervelt*, 105 AD3d at 896-897; *Gottesman v Friedman*, 90 AD3d 608, 609 [2011]). A defendant's eventual awareness of pending litigation will not affect the absence of jurisdiction over him or her where service of process is not effectuated in compliance with CPLR 308 (*see De Zego v Donald F. Bruhn, M. D., P. C.*, 67 NY2d 875, 877 [1986]; *Macchia v Russo*, 67 NY2d at 595; *Feinstein v Bergner*, 48 NY2d 234, 241 [1979]; *Krisilas v Mount Sinai Hosp.*, 63 AD3d at 889; *Bankers Trust Co. of Cal. v Tsoukas*, 303 AD2d 343, 344 [2003]). Where a court determines that a defendant rebutted the presumption of service, which is ordinarily established through a process server's affidavit of service, and sets the matter down for a hearing, the burden at the hearing is on the plaintiff to establish by a preponderance of the evidence that personal jurisdiction was acquired over the defendant (*see Aurora Loan Servs., LLC v Gaines*, 104 AD3d 885, 886 [2013]; *Gray v Giannikios*, 90 AD3d 836, 837 [2011]; *Engel v Boymelgreen*, 80 AD3d 653, 655 [2011]; *Goralski v Nadzan*, 89 AD3d 801, 801 [2011]).

CPLR 308 sets forth the different ways in which service of process upon an individual can be effected in order for the court to obtain jurisdiction over that person. CPLR 308 (2) provides, in pertinent part, that personal service upon a natural person may be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by . . . mailing the summons to the person to be served at *his or her last known residence*" (emphasis added). "Jurisdiction is not acquired pursuant to CPLR 308 (2) unless both the delivery and mailing requirements have been strictly complied with" (*Gray-Joseph v Shuhai Liu*, 90 AD3d 988, 989 [2011]; *see Daguerre, S.A.R.L. v Rabizadeh*, 112 AD3d 876, 878 [2013]; *Munoz v Reyes*, 40 AD3d 1059, 1059 [2007]; *Ludmer v Hasan*, 33 AD3d 594, 594 [2006]). It "is

a two-step form of service in which a delivery and mailing are both essential" (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C308:3).

Since, under the circumstances of this case, the Noyack property, although Murphy's vacation home, could properly be characterized as his dwelling place or usual place of abode (*see Krechmer v Boulakh,* 277 AD2d 288, 289 [2000]), we agree with the Supreme Court that the plaintiff satisfied the first prong of CPLR 308 (2) by a fair preponderance of the evidence by serving process upon a person of suitable age and discretion at the Noyack property (*see Bank of N.Y. v Espejo,* 92 AD3d 707, 708 [2012]; *Roldan v Thorpe,* 117 AD2d 790, 791 [1986]).

However, the plaintiff failed to meet its burden of proof that its mailing of copies of the summons and complaint to that same address satisfied the second prong of CPLR 308 (2). The undisputed evidence demonstrated that the plaintiff received notice from Murphy that the Reade Street address was to be used with respect to all notices concerning the Noyack property. Thereafter, from 2003 through December 2008, a period of time extending beyond the date of the mailing of copies of the summons and complaint to the Noyack property, the plaintiff actually utilized the Reade Street address to send Murphy all correspondence and notices relating to the Noyack property, including those referable to the mortgage statements and Murphy's default thereunder. The only documents that the plaintiff mailed to the Noyack property were the summons and complaint, despite its knowledge that Murphy had given notice in accordance with the terms of the mortgage that his residence was the Reade Street address, and that it was at that address that he was to receive all mail.

Further, Murphy demonstrated that his driver's license and his voter registration were based upon the Reade Street address, and that the Noyack property was not claimed as his primary residence for tax purposes. Thus, for the purpose of satisfying the objectives of CPLR 308 (2), Murphy's "last known residence" was not the Noyack property (*see Feinstein v Bergner,* 48 NY2d at 241; *Mangold v Neuman,* 87 AD2d 780 [1982], *affd* 57 NY2d 627 [1982]; *cf. Bank of N.Y. v Espejo,* 92 AD3d at 708; *Melton v Brotman Foot Care Group,* 198 AD2d 481, 481 [1993]; *Townsend v Hanks,* 140 AD2d 162, 163 [1988]).

Accordingly, the Supreme Court should have granted that branch of Murphy's motion which was pursuant to CPLR 5015 (a) (4) to vacate the judgment of foreclosure and sale, and thereupon should have dismissed the complaint insofar as asserted against him. Dillon, J.P., Dickerson, Hall and Austin, JJ., concur.