W.G.G. v J.D.S.-G. (2024 NY Slip Op 24072)

[*1]

W.G.G. v J.D.S.-G.

2024 NY Slip Op 24072

Decided on March 6, 2024

Supreme Court, Nassau County

Dane, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 6, 2024
Supreme Court, Nassau County

W.G.G., Plaintiff,

against
J.D.S.-G., Defendant.

Index No. 800247/2023

Attorney for Plaintiff:
ROCCO & ROCCO P.C.
3601 Hempstead Tpke Ste Ll-f
Levittown, NY 11756
(516) 731-5200
esqrocco@aol.com
Attorney for Defendant:
Victor Mevorah PC
100 Garden City Plaza
Suite #400
Garden City, NY 11530
(516) 747-0720
mailto:victor@victormevorahpc.com

Edmund M. Dane, J.

The following papers have been read on these applications:

 
 Defendant's Order to Show Cause dated December 4, 2023.........................................................................x
Plaintiff's Opposition dated January 16, 2024................................................................................................x
Defendant's Reply dated February 22, 2024...................................................................................................x
 
 
 
 INTRODUCTION
The instant application provides a matrimonial court with an opportunity to address the efficacy of service of legal papers, completed by a person who is: (a) a relative of one of the [*2]parties and (b) been judicially determined to be incapacitated. The short summary of this matter is that the Plaintiff commenced this matrimonial action. The Defendant defaulted, as this matter proceeded to Inquest. The Defendant thereupon appeared by counsel and interposed an application to vacate her default. The principal issue on this application poses a precise question of law: may a person who has judicially been declared to be incapacitated, and who is a relative of one of the parties serve process and legal papers in a matrimonial action? Because the Court answers that question in the negative, the Court finds that any such purported service performed by that individual constitutes a nullity. The Court therefore finds that the Defendant has established a "reasonable excuse" for her default and vacates the default entered against her.

 PRELIMINARY STATEMENT
The Defendant moves by Order to Show Cause dated September 4, 2023 (Motion Sequence No.: 001) seeking an Order: (a) Restoring the above-captioned action to the Court's Calendar and vacating the Inquest Default Judgment entered on October 3, 2023, in favor of the Plaintiff against Defendant, J. D. S.-G., in the above captioned action; (b) Allowing the answering Defendant to defend this action; (c) Directing Plaintiff to pay for the Defendant's interim attorney's fees in the sum of $5,000.00 with respect to the instant application; and (d) For such other and further relief as this Court may seem just and proper.

 BACKGROUND
These parties were married on XXXX XX, 2016. There were no children of this marriage. The underlying matrimonial action was commenced by the filing of a Summons and Compliant with the Nassau County Clerk's Office on February 3, 2023. On June 30, 2023, this Court issued an Order Directing Preliminary Conference whereby it directed both parties to appear for a Preliminary Conference on July 20, 2023. The Defendant did not appear for the Preliminary Conference on July 20, 2023. On July 21, 2023, this Court issued an Order to Appear which directed both parties to appear for a compliance conference on September 19, 2023. The Defendant did not appear on September 19, 2023. On September 21, 2023, this Court issued an Order Directing Inquest whereby it directed both parties to appear for an Inquest before the undersigned Justice on October 2, 2023.[FN1]

The Defendant did not appear on October 2, 2023, and the Court proceeded to an Inquest in her absence. On October 2, 2023, this Court issued an Order Directing Submission of Findings of Fact, Conclusions of Law, and Judgment of Divorce. The contested judgment packed was thereupon submitted to the Clerk's Office through NYSCEF on November 7, 2023. On November 17, 2023, the Defendant appeared through counsel by the filing of a Notice of Appearance. The Defendant thereupon filed the instant Order to Show Cause on December 4, 2023, which the Court heard on even date. Upon the signing of the Order to Show Cause, this Court issued the following interim Order:

 ORDERED, that pending the hearing of this Motion and further Order of this Court, the Inquest Default Judgment entered on October 3, 2023 is hereby stayed as against J.D.S.-G.

 THE PARTIES' CONTENTIONS

[*3]Defendant's Contentions:
The Defendant argues that she was never served with any documents relating to the divorce. She argues that the Defendant has failed to provide her with any notice of the divorce despite the fact that the parties live in the same residence. She argues that the Affidavit(s) of Service were falsified and that the Plaintiff assigned his mentally disabled son as the "token process server". The Defendant argues that the Plaintiff's Letter of Appointment for Guardianship and medical records establish that the Plaintiff's mentally challenged son, S., is incapable of handling process serving tasks. She argues that, at the Inquest, the Plaintiff misrepresented the nature of property to be distributed and that the Defendant is self-supporting. She argues that the Plaintiff never filed a sworn Statement of Net Worth, which would have revealed the Plaintiff's multiple business interests, unreported cash income, bank accounts, investment accounts, vehicles, boats and other properties. She argues that continuing with the default against her would, in effect, be a denial of her due process rights. She denies being served with the Summons and Complaint, denies being served with the Order Directing Inquest, and she only became aware of the divorce when she saw a bill from an attorney's office on the table, which she realized was a divorce attorney. She argues that the Plaintiff earns income through several business interests, estimated at $561,504.84 for one project. She argues that the Plaintiff has a patent on one of his businesses and that he earns side income from stocks. She argues that she has not worked since 2020 and only earned between $15,000 and $20,000 in income. She argues that she stopped working in 2020, having been diagnosed with anxiety and depression, and the Plaintiff falsely asserted that she is self-supporting. She argues that the Plaintiff has put her citizenship in danger when he falsely asserted that their marriage was a fraud, which caused her naturalization application to be dismissed. She argues that the Plaintiff submitted a false Visa application dated November 26, 2022 where he asserted that he was divorced and that he filled out a fiancé Visa application to visit his girlfriend in Nigeria. She also argues that the Plaintiff submitted falsified loan applications representing his marital status as "unmarried".
Plaintiff's Opposition:
The Plaintiff argues in opposition through a fifteen (15) page Affidavit. He argues that the Defendant was mailed several letters from his counsel [FN2]
. He argues that the Defendant was served with all court papers by his adult son and he "...was present for each service job by my son to ensure it was properly done..." He argues, in effect, that the Defendant was an absentee spouse during the marriage. He argues that his counsel mailed her several notices from the Fall of 2022, which she never responded to. He argues that his son used to be under his guardianship while living in New Hampshire to insure that he took his prescribed medication, but that, several years ago when they relocated to New York, he ceased being his guardian. He argues that his son is not mentally challenged. He argues that he purchased the house on December 4, 2015, which was prior to the parties' marriage and he made repairs using leftover materials from various construction projects. He argues that he was the only one to make mortgage payments on the home. He argues that the Defendant makes clothing, jewelry and artwork which she sells. He denies filing fraudulent documents. He argues that the Defendant always worked full-time until the onset of the COVID-19 pandemic. He states that he invented a project management app but [*4]still owes money for filing the patent and it has not brought in money. He sets forth that he has less than $5,000 in stocks, he does not own property with his father, and he is not wealthy. He argues that the parties lived separate lives from the time they were married. He denies making fraudulent statements to the Immigration Department. He denies owning any investment accounts, other than his stock accounts, He argues that he owned his vintage car prior to the marriage. He argues that he owns a motorcycle and boat which he purchased before the marriage. He argues that he has been paying for the Defendant's living expenses during the pendency of the case and he continues to do so now.
Plaintiff's Reply:
The Plaintiff argues that the Defendant has not proffered any documents in support of his assertions. The Plaintiff argues that the Defendant's credibility is nonexistent, and she reiterates that she is entitled to vacatur of the default judgment. She argues, in effect, that she has a reasonable excuse for her default inasmuch as she was never served with papers and that she has a meritorious defense as she is entitled to maintenance and has claims toward equitable distribution. She argues that the Plaintiff has not filed a Statement of Net Worth, nor has he provided evidence of his income. She argues that the Plaintiff's Visa application is dated November 26, 2022, wherein he represented himself as unmarried, and that the Inquest took place approximately one year later. She denies voluntarily ceasing employment, and argues that she could not return to work due to various health maladies and infirmities.

DISCUSSION + ANALYSIS

VACATUR OF DEFAULT
CPLR § 5015 provides:

 (a) On Motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:
1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party, or, if the moving party has entered the judgment or order, within one year after such entry...
See CPLR § 5015(a)(1).
Pursuant to CPLR § 5015(a)(1), a party seeking to vacate a default ordinarily must show a reasonable excuse for his or her default and a meritorious defense to the action or motion. Genzone v. Genzone, 146 AD3d 752 (2d Dept. 2017); see also and see generally Gallousis v. Gallousis, 219 AD3d 466 (2d Dept. 2023). Marriage, however, "constitutes an institution involving the highest interests of society". Antonovich v. Antonovich, 84 AD2d 799 (2d Dept. 1981). The general policy favoring resolution of issues on the merits has especial force in cases involving the marital relationship. Alam v. Alam, 123 AD3d 1066 (2d Dept. 2014). In matrimonial actions, the Second Department has applied a liberal policy with respect to vacating defaults. Backhaus v. Backhaus, 128 AD3d 872 (2d Dept. 2015).
A. Reasonable Excuse
The determination of what constitutes a "reasonable excuse" lies within the sound discretion of the Supreme Court. Capurso v. Capurso, 134 AD3d 974 (2d Dept. 2015). Whether [*5]there is a reasonable excuse for a default is a discretionary, sui generis determination to be made by the court based on all relevant factors, including the extent of the delay, whether there has been prejudice to the opposing party, whether there has been willfulness, and the strong public policy in favor of resolving cases on the merits. Gately v. Drummond, 161 AD3d 947 (2d Dept. 2018). The Court will examine those factors, and more, in this Decision and Order.
i. Extent of the Delay
The Court notes that the Inquest of this matter occurred on October 2, 2023 (see Transcript of Inquest, NYSCEF Document No.: 34). The Court also notes that the Defendant's application was interposed on December 4, 2023, a mere two (2) months after the Inquest. The Court does not find that the Defendant undertook a substantial delay in moving to vacate the default entered against her. In fact, the Court is cognizant of the fact that the Defendant moved to vacate her default prior to the Judgment of Divorce being signed by the Court, and that she moved to vacate her default less than two (2) months after the contested judgment documents were filed with the Matrimonial Clerk's Office. This factor weighs in favor of vacating the Defendant's default.
ii. Service of Process
The interesting issue lies here. The Defendant claims that she was never served with any of the papers in this action. Specifically, she claims "...[i]t is respectfully submitted that I was never served a single document related to this divorce..."[FN3]
This includes, implicitly, a claim that she was not served with the initial pleadings, to wit: the Summons and Complaint. The Affidavit(s) of Service of the Summons and Complaint, of the Order Directing Preliminary Conference, of the Order to Appear, and of the Order Directing Inquest are all appended to the Defendant's moving papers.[FN4]
They all reflect that an individual by the name of S. G., the Plaintiff's son (hereinafter referred to as the "Plaintiff's Son") claims to have served those documents upon the Defendant. At issue here, and as discussed hereinafter, the Plaintiff's Son was found by a court [FN5]
to be incapacitated (see Guardianship Order, infra).
Initially, and as a threshold matter, CPLR § 2013(a) provides:

 Who can serve. Except where otherwise prescribed by law or order of court, papers may be served by any person not a party of the age of eighteen years or over.
While the text of CPLR § 2013(a) provides that any person not a party and eighteen (18) years of age or older may serve papers, the text of CPLR § 2013(a) also seemingly implies that the Court has discretionary authority to limit or prohibit service of process by certain individuals. The Court finds that authority in the phrase "...or order of the court..." after the words "[e]xcept where otherwise prescribed..." CPLR § 2013(a)'s ill-defined and vague exception (see supra) as to who may not serve process naturally begs the converse, but obvious, question: who cannot serve process? To attempt to ascertain the answer to that question, CPLR § 309(b) addresses the [*6]opposite scenario: service of process upon an incompetent person. That statute provides:

 Upon a person judicially declared to be incompetent. Personal service upon a person judicially declared to be incompetent to manage his affairs and for whom a committee has been appointed shall be made by personally serving the summons within the state upon the committee and upon the incompetent, but the court may dispense with service upon the incompetent.

 (emphasis added).
CPLR § 309(b) is written in the conjunctive, requiring service of process upon an incompetent person be effectuated upon the incompetent and the committee. Such a dual service requirement naturally implies insufficiency of service solely upon an incompetent person. As part and parcel of the Defendant's application seeking to vacate her default, she challenges service of process. The server in this case is the Plaintiff's Son. The Court notes that the Plaintiff's Son is a judicially declared incapacitated person. Appended to the Defendant's moving papers is documentation from the State of New Hampshire Judicial Branch, NH Circuit Court (see NYSCEF Document No.: 32). That documentation (hereinafter referred to as the "Guardianship Order") provides:

CO-GUARDIANS OVER THE PERSON
ORDER

 Case Name: Guardianship of S. G.
Case Number: 317-2019-GI-00761
After a hearing held at this court, and upon due consideration of the petition for guardianship filled by NH Hospital and all the evidence proffered thereon, the court renders the following findings as required by RSA 464-A:9, III (a)-(d), namely:
(a) S. G. ("ward") is Incapacitated.
(b) Guardianship is necessary as a means of providing for the ward's continuing care, supervision, and rehabilitation.
(c) There are no available alternative resources which are suitable with respect to the ward's welfare, safety or rehabilitation.
(d) Guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the ward's civil rights and liberties.
The court finds that the ward is incapable of exercising the following rights, namely, the right to:
Travel or decide where to live.
Refuse or consent to medical or other professional care, counseling, treatment or service, including the right to be admitted or discharged from any hospital or other medical institution providing such at the lawful direction of the guardian of the person.
Marry or divorce.
Make a will or waive the provisions of a will.
Have access to, grant release of, withhold, deny, or refuse authorization for the guardian of the person to obtain access to and release of the ward's confidential records and papers insofar as the same may be reasonably needed by the guardian of the person to ensure that the ward's mental, emotional and physical health concerns are properly addressed and treated.
Cancel, reject, or oppose any authority or power of the guardian of the person duly exercised pursuant to this order.
Initiate, defend or settle lawsuits.
Make contracts or grant power of attorney or other authorizations.
Make decisions concerning educational matters and training.

 * * *
NOTICE TO WARD

 The within order appoints S.G.; W.G. Sr. as co-guardians over your person. You have the right to seek alteration or termination of this guardianship at any time.
You have the right to appeal this order and the guardianship appointment(s). To appeal, you must file a notice of appeal with the clerk of the New Hampshire Supreme Court within thirty (30) days of the date of this notice.

Service of process must be made in strict compliance with statutory methods for effecting personal service upon a natural person pursuant to CPLR § 308. Washington Mut. Bank v. Murphy, 127 AD3d 1167 (2d Dept. 2015) (emphasis added). CPLR § 308 also sets forth the different ways in which service of process upon an individual can be effected in order for the court to obtain jurisdiction over that person. Washington Mut. Bank, 127 AD3d at 1174. Service of process is necessary to obtain personal jurisdiction over a defendant. Cedar Run Homeowners' Assn., Inc. v. Adirondack Dev. Group, LLC, 173 AD3d 1330 (3d Dept. 2019). This Court concludes that a person who is a relative of a party who has also been found by a court to be incapacitated cannot serve process in a matrimonial action. Public policy and due process considerations compel that result. The risk of abuse of service of process is simply too great for the Court to be reliant upon an incapacitated relative to perform and swear to the fact that he or she effectuated service of process. That conclusion logically flows from the fact that the person who is a party to this action could easily assert undue influence over the incapacitated relative as the party (namely, the Plaintiff here) has the legal right under the Guardianship Order to restrict the incapacitated person's personal freedom (see infra).
The Guardianship Order is specific. It states that "...[g]uardianship is necessary as a means of providing for the ward's continuing care, supervision, and rehabilitation..." The Court is dubious that a person who cannot decide where he lives, cannot decide where or if he can travel, cannot decide whether or not to receive medical care, cannot decide whether or not he can marry or divorce, cannot make a will, cannot enter contracts, cannot prosecute or defend lawsuits and/or cannot make decisions concerning his education could, in the same vein, serve process and swear [*7]to the efficacy of such service for a lawsuit.[FN6]
The Notes to CPLR § 306 punctuate the growing problems of personal service, highlighting the "...frequency of traverses and of litigation concerning whether personal service actually was obtained..." See Notes to CPLR § 306, 1989 Recommendations of Advisory Committee on Civil Practice.
The Guardianship Order also provides:

 "The court appoints S.G.; W.G., SR as co-guardians over the person of the ward....[t]he co-guardians are granted the right to exercise those rights as specified in this documents...[t]he guardians of the person shall act with respect to the ward in a manner which safeguards, to the greatest extent possible, the ward's civil rights, and shall restrict the ward's personal freedom only to the extent necessary..."
If the Plaintiff is allowed to restrict the freedom of his son, the Court concludes that the Plaintiff's son is incapable of understanding the legal effect, ramifications and procedures of service of legal papers. Since the protection of incompetent persons and persons incapable of adequately prosecuting or defending their rights has always been of great concern (see Will of Arneson, 84 Misc 2d 128) (Surrogate's Court Westchester County 1975)), it should logically follow that those incompetent persons are incapable of ensuring that process for a lawsuit is delivered. If the Plaintiff's Son cannot initiate, defend or settle lawsuits (see Guardianship Order, supra), then he cannot understand the important duty of service of process. The importance of service of process is also underscored by Professor David D. Siegel:

The certificate or affidavit specifies the papers served, the person on whom service was made and the when and how of the service, and facts showing that the process server was a proper person, i.e., a hominid 18 or over and not a party. It must also include a description of the person to whom the summons was delivered—including sex, color of skin and hair, approximate age, weight, and height, and other identifying features. These requirements were enacted to help discourage sewer service...
* * *
Proof of service loses its importance under these provisions if the defendant makes a timely appearance and defends without contesting jurisdiction. But it is a key item if the defendant defaults; it then becomes an indispensable part of the papers that must be filed for a default judgment...
See Siegel, New York Practice, Fifth Ed. § 79.
It cannot reasonably be expected or inferred that the Plaintiff's Son - an incapacitated person - can manage his or her affairs or understand the legal consequences or ramifications of his or her decision(s), especially in light of the express findings in the Guardianship Order. The [*8]inability of the Plaintiff's Son to be able to make contracts implicitly renders him unable to either make an offer, accept an offer, provide consideration for the offer, mutually assent to the terms of the contract and/or intend to be bound by the agreement.[FN7]
Additionally, the inability of the Plaintiff's Son to either prosecute, defend or settle a lawsuit implicitly renders him unable to make decisions concerning that lawsuit irrespective of whether or not he is prosecuting it or defending it.[FN8]
If an incapacitated person cannot effectively be a party to a lawsuit, it naturally flows that such a person cannot be expected to serve process for a lawsuit. What is more, the Plaintiff's Son is unable to marry according to the Guardianship Order. Rising from the most basic human needs, marriage is essential to our most profound hopes and aspirations (see Obergefell v. Hodges, 576 U.S. 644, 656 (2015)), and the "...right to marry...is a central part of the liberty protected by the Due Process Clause..." (Obergefell, 576 U.S. at 668). The Plaintiff's Son is unable to exercise a basic right protected by the Due Process Clause. While not intended as a criticism of him, his inability to exercise such a basic right renders him unable, to this Court, to effectively properly serve and swear to proper service of process. Moreover, the Plaintiff's Son may not, under the Guardianship Order, refuse or consent to medical or other professional care. Under long-established common-law principles, every human being of adult years and sound mind has a right to determine what shall be done with his own body. Fosmire v. Nicoleau, 75 NY2d 218 (1990) (Hancock, Jr., J., concurring). By the New Hampshire Court stripping the Plaintiff's Son of his ability to consent to or refuse medical treatment, the Guardianship Order effectively implies that the Plaintiff's Son is not of "sound mind". The Court cannot conclude that a person who has effectively been stripped of the right to determine what shall be done with his or her own body can serve process or legal papers inasmuch as that person simply cannot understand the ramifications of such service. All of these factors as described herein buttress the Court's conclusion that public policy compels the result reached herein. The Court simply cannot find that the Plaintiff's Son is an authorized person to serve process. See CPLR § 306(a) ("...[p]roof of service shall specify the papers served...showing that the service was made by an authorized person and in an authorized manner...").
At a bare minimum, a party to a matrimonial action is entitled to notice of the cause of action(s) asserted against him or her and what relief is being sought. After all, the State's interest in the marital res and allied issues favors dispositions on the merits. See generally Viner v. Viner, 291 AD2d 398 (2d Dept. 2002). For the Defendant, that "notice" generally occurs upon service. The service of a document designed to put the other party on notice of the claim cannot be entrusted to a judicially declared incapacitated person who has effectively been stripped of his basic rights by a court. The Plaintiff herein was granted the right to exercise rights and make decisions for his son under the Guardianship Order. CPLR 2103(a) prohibits a party from serving [*9]process absent a court order. See generally 1319 Third Ave. Realty Corp. v. Chateaubriant Rest. Dev. Co. LLC, 14 Misc 3d 1207(A) (Civil Court New York County 2006). To find valid service in this case would be tantamount to a conclusion that, effectively, the Plaintiff himself served process, which he is prohibited from doing. Inasmuch as the Court finds that service of process was a nullity, the Court finds that the failure to properly serve process is a factor weighing in favor of vacating the Defendant's default.
iii. Willfulness + Plaintiff's Credibility
The Court finds no willfulness on the part of the Defendant in failing to appear in this matter. Not only was process not properly effectuated upon her (see supra), the Defendant retained counsel on November 17, 2023 (see NYSCEF Document No.: 40), a mere forty-five (45) days after the Inquest. Her speedy retention of counsel thereafter deflates any claims that her default or failure to appear was willful. In addition, while the Plaintiff claims, in support of his argument that the Defendant's default was willful, that numerous letters were sent to the Defendant, those letters are not appended to the Plaintiff's papers in opposition, and the Court therefore rejects that claim as unavailing.
The Court also considers the Defendant's speedy retention of counsel with another factor in determining willfulness: the Plaintiff's absolute lack of credibility. In this respect, the Court has considered the statement in the Plaintiff's opposing Affidavit that "...I was present for each service job by my son to ensure it was properly done..."[FN9]
To the extent that the Plaintiff offers this statement as, in effect, a corroborating statement that his incapacitated son properly effectuated service of process, the Court outright rejects same as the Court has sufficient information before it to conclude that the Plaintiff is completely devoid of any credibility for the reasons herein.
The Court has reviewed the Plaintiff's Entry Visa Application Form submitted to The Nigeria Immigration Service (see NYSCEF Document No.: 54). His application, which appears to have been submitted to the Embassy of the Federal Republic of Nigeria, was dated November 18, 2022. The Court notes that this was prior to the commencement of this divorce action. He lists his proposed "intended duration of stay" as "7 days, Dec 30th 2022 - Jan 6, 2023 [sic]".[FN10]
On that application form, the Plaintiff listed his "Marital Status" as "Divorced" despite the fact that the instant matrimonial action had yet to be commenced (emphasis added). The Plaintiff's representation as being divorced on November 18, 2022 was an outright misrepresentation, as the Plaintiff swore, in his Verified Complaint (see NYSCEF Document No.: 36), that these parties were married on August 30, 2016. Notably, as of November 18, 2022, the instant matrimonial action had not even been commenced.[FN11]
 Indeed, the Court notes that, to date, the parties marriage has not yet been dissolved.
The Court has also reviewed the Plaintiff's Petition for Alien Fiance(e) submitted to the [*10]Department of Homeland Security (see NYSCEF Document No.: 55). The Plaintiff's signature appears on page ten (10) thereof with the following certification:

 "I certify, under penalty of perjury, that all of the information in my petition and any document submitted with it were provided or authorized by me, that I reviewed and understand all of the information contained in, and submitted with my petition, and that all of this information is complete, true and correct.
(emphasis added).
The application is dated August 26, 2023, which was before the date of the Inquest. On page four (4) of the document, the Plaintiff represented his "Marital Status" as "Divorced". The Court notes that the parties' marriage has not been dissolved, and the Plaintiff was not divorced on the date that he certified, under the penalties of perjury, that he was divorced. The Plaintiff's willingness to make misrepresentations on multiple government forms regarding his marital status is shocking. He has provided this Court with no reasonable explanation as to why he represented himself to be a divorced man on government forms before he was divorced and before he even commenced a divorce action. The Plaintiff, in effect, asked the Nigerian Government and the United States Department of Homeland Security to rely upon his representation that he was a divorced man before he was divorced and while he was still legally married.
Furthermore, the Court has reviewed the U.S. Citizenship and Immigration Services Decision dated May 2, 2022 (see NYSCEF Document No.: 51). In pertinent part, it reads:

 "At the interview on January 11, 2023 for the instant N-400 application, you were questioned further regarding your marriage to W.G. from whom you obtained lawful permanent resident status. You were confronted with the claim made by W.G. that your marriage to him was fraudulent. Mr. G. was interviewed by USCIS on two occasions, and he indicated that your marriage was not real..."
The Court interestingly notes that the Plaintiff, who commenced this matrimonial action, alleged a single cause of action: for a divorce based upon the irretrievable breakdown of the relationship for at least six months pursuant to DRL § 170 subd. (7). The Plaintiff also testified at the Inquest as follows:
Q: Were you legally married to J. D. S.-G.?
A: Yes.
Q: When were you married?
A: xxxx xx, 2016.

 * * *
Q: Has the relationship between yourself and your spouse broken down irretrievably for a period of at least six months?
A:Yes.
The Plaintiff swore before this Court that he was legally married to the Defendant and that his legal marriage suffered an irretrievable breakdown. Yet he appeared before U.S. Citizenship and Immigration Services and represented to that government entity that his marriage was fraudulent. Notably, the Plaintiff did not seek an order annulling of this marriage pursuant to Domestic Relations Law § 140(e), which provides, in part:

 Consent by force, duress or fraud...[a]n action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by fraud may be maintained by the party whose consent was so obtained within the limitations of time for enforcing a civil remedy of the civil practice law and rules. Any such action may also be maintained during the life-time of the other party by the parent, or the guardian of the person of the party whose consent was so obtained, or by any relative of that party who has an interest to avoid the marriage, provided that in an action to annul a marriage on the ground of fraud the limitation prescribed in the civil practice law and rules has not run. But a marriage shall not be annulled on the ground of...fraud, if it appears that, at any time before the commencement thereof, the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud.
Notably, when the Legislature enacted the ostensible "no-fault" provisions o DRL § 170 subd. (7), it did not repeal any of the other grounds set forth in DRL § 170, nor did it repeal the grounds for annulment of a marriage codified within DRL § 140. The Plaintiff made a representation to a government entity that the marriage that is the subject of this litigation was the result of fraud, yet he claimed to this Court that the parties were legally married. The Court notes that a marriage obtained by fraud is voidable by way of an annulment action. See generally Travis A. v. Vilma B., 197 AD3d 1401 (3d Dept. 2021). The Court finds that the Plaintiff's wholly inconsistent positions before multiple governments and before this Court deflate any semblance of credibility he may have.
iv. Public Policy
There is an important public policy of determining matrimonial matters on the merits. Gass v. Gass, 42 AD3d 393 (1st Dept. 2007); see also Zeledon v. Zeledon, 211 AD3d 1387 (3d Dept. 2022). Here, the Court has reviewed the Transcript of the Inquest held on October 2, 2023. In relevant part, it provides:
MR. ROCCO: It's a short-term marriage. There's no children of the marriage. There's no property of the marriage. All parties are self supporting, so it's strictly on grounds.

 * * *
Q: Are you an the defendant both self-supporting?
A: Yes.

 * * *
Q: At this time, are you seeking any equitable distribution of any marital property?
A: No.
Q: Are you seeking any spousal support?
A: No.
See Inquest Transcript, pages 3, 5. See NYSCEF Document No.: 34.
While the Plaintiff may have testified that the parties are self-supporting, and while there was a representation that there is no marital property to be divided, the Court has considered the Plaintiff's total lack of credibility as set forth herein (see supra). In addition, the Court notes that the Plaintiff offered no documentary evidence at the Inquest that the Defendant was self-supporting (such as proof of her income) and he offered no documentary evidence that there was no marital property to be divided (such as a sworn Statement of Net Worth). The strong public policy in favor of deciding matrimonial actions on the merits is a factor weighing in favor of vacating the Defendant's default.
B. Meritorious Claim
To vacate a default judgment, the movant in required to demonstrate a potentially meritorious claim. Cox v. New York State Thruway Auth., 202 AD3d 1043 (2d Dept. 2022); see also Wexler v. Wexler, 34 AD3d 458 (2d Dept. 2006) (moving party must show the existence of a meritorious claim). Here, the Court finds the existence of meritorious claims to, among other things, equitable distribution, maintenance and counsel fees.
First, as to the issue of maintenance, the Court has reviewed the Defendant's submitted tax returns and notes that the Defendant claims to have earned $22,777 in adjusted gross income in 2021, $26,057 in adjusted gross income in 2020, $16,723 in adjusted gross income in 2019, and $3,908 in adjusted gross income in 2018. The Plaintiff has not submitted documentary evidence of his income, such as tax returns, W-2 Statements, Schedule K-1's, and/or 1099 Statements representing his income. In addition, Domestic Relations Law § 236(B)(4)(a) provides, in relevant part, that:
4.Compulsory financial disclosure.

a. In all matrimonial actions and proceedings in which alimony, maintenance or support is in issue, there shall be compulsory disclosure by both parties of their respective financial states...[a] sworn statement of net worth shall be provided upon receipt of a notice in writing demanding the same, within twenty days after the receipt thereof...[a]ll such sworn statements of net worth shall be accompanied by a current and representative paycheck stub and the most recently filed state and federal income tax returns including a copy of the W-2(s) wage and tax statement(s) submitted with the returns..."

 (emphasis added).
The Court notes that the Plaintiff himself has failed to submit a Statement of Net Worth swearing to his income in derogation of Domestic Relations Law § 236(B)(4)(a) (see supra). Indeed, the Plaintiff fails to even represent what his income is in his opposing Affidavit. The Court finds the existence of a potentially meritorious claim for spousal maintenance, which is a factor weighing in favor of vacating the Defendant's default.

Second, as to the issue of equitable distribution, the Plaintiff's failure to submit a sworn Statement of Net Worth attesting to his assets renders it impossible to determine whether or not [*11]the Plaintiff's representation at the Inquest that there were no marital assets to be divided, especially in light of his total lack of credibility (see supra), was truthful. Indeed, Domestic Relations Law § 236(B)(4)(a) also provides that the term "net worth" shall mean:

 "...the amount by which total assets including income exceed total liabilities including fixed financial obligations. It shall include all income and assets of whatsoever kind and nature and wherever situated and shall include a list of all assets transferred in any manner during the preceding three years, or the length of the marriage, whichever is shorter; provided, however that transfers in the routine course of business which resulted in an exchange of assets of substantially equivalent value need not be specifically disclosed where such assets are otherwise identified in the statement of net worth..."
The Plaintiff's failure to file a sworn Statement of Net Worth renders it impossible for the Court to determine the Plaintiff's total assets and whether or not any of those assets are marital property or separate property. The Court therefore finds the existence of a potentially meritorious claim for equitable distribution, which is a factor weighing in favor of vacating the Defendant's default. Third, and finally, as to the issue of counsel fees, the Plaintiff's failure to submit documentation of his income, cognizable proof of his assets and/or a sworn Statement of Net Worth attesting to his income and assets gives rise to a potentially meritorious claim for counsel fees.
C. Conclusion
In light of all of the aforesaid, it is hereby:
ORDERED, that Branches (a) and (b) of the Defendant's Order to Show Cause dated December 4, 2023 be and the same is hereby GRANTED and the Inquest default judgment entered against the Defendant is hereby VACATED, and the Defendant shall be permitted to defend this action; and it is further
ORDERED, that the Defendant is hereby permitted to file a Verified Answer with any counterclaims (if any) and/or affirmative defenses (if any), which Verified Answer shall be filed within twenty (20) days of this Decision and Order.
COUNSEL FEES
DRL § 237(a), the statutory predicate for an award of counsel fees, provides in relevant part:

 "...(a) In any action or proceeding brought...for a divorce...the court may direct either spouse...to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. There shall be a rebuttable presumption that counsel fees shall be awarded to the less monied spouse..."
An award of counsel fees pursuant to Domestic Relations Law § 237(a) is a matter within the sound discretion of the trial court, and the issue is controlled by the equities and circumstances of each particular case. Fugazy v. Fugazy, 210 AD3d 653 (2d Dept. 2022). An award of interim counsel fees is designed to redress the economic disparity between the monied spouse and the non-monied spouse, and ensures that the nonmonied spouse will be able to [*12]litigate the action, and do so on equal footing with the monied spouse. Pezzollo v. Pezzollo, 173 AD3d 918 (2d Dept. 2019); see also Cohen v. Cohen, 160A.D.3d 804 (2d Dept. 2018). Not only is there a rebuttable presumption that interim counsel fees shall be awarded to the less monied spouse, but courts should normally exercise their discretion to grant such a request made by the nonmonied spouse, in the absence of good cause to deny the request. See Pezzollo, supra; see also Prichep v. Prichep, 52 AD3d 61 (2d Dept. 2008).
In Prichep v. Prichep, the Second Department explained:

 "...the realities of contentious matrimonial litigation require a regular infusion of funds, and that more frequent interim counsel fee awards would prevent accumulation of bills..."
Prichep v. Prichep, 52 AD3d 61 (2d Dept. 2008); see also Frankel v. Frankel, 2 NY3d 601 at fn. 1. A counsel fee award helps reduce what would otherwise be a substantial advantage to the monied spouse. Such awards are designed to redress the economic disparity between the monied spouse and the non-monied spouse and ensure that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet. Kaplan v. Kaplan, 28 AD3d 523 (2d Dept. 2006); see also O'Shea v. O'Shea, 93 NY2d 187 (1999). As the First Department wrote in Silverman v. Silverman:

 Section 237 (a) [of the Domestic Relations Law] permits the court to direct either spouse to pay counsel fees to the other spouse "to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. The intent of the provision is to ensure a just resolution of the issues by creating a more level playing field with respect to the parties' respective abilities to pay counsel, to make sure that marital litigation is shaped not by the power of the bankroll but by the power of the evidence. Therefore, where the parties' respective financial positions gives one of them a distinct advantage over the other, the court may direct the monied spouse to pay counsel fees to the lawyer of the nonmonied spouse. The statute's reference to having regard to the circumstances of the case and of the respective parties permits consideration of many factors, but focuses primarily upon the paramount factor of financial need.
Silverman v. Silverman, 304 AD2d 41 (1st Dept. 2003) (internal citations omitted).
An award of interim counsel fees to the nonmonied spouse will generally be warranted where there is a significant disparity in the financial circumstances of the parties. Fugazy, 210 AD3d at 655-656. Because of the importance of such awards to the fundamental fairness of the proceedings, an application for interim counsel fees by the nonmonied spouse in a divorce action should not be denied—or deferred until after the trial, which functions as a denial—without good cause, articulated by the court in a written decision. Id. at 656. Unlike a final award of counsel fees, a detailed inquiry or evidentiary hearing is not required prior to an award of interim counsel fees. Chiarello v. Chiarello, 214 AD3d 853 (2d Dept. 2023).
In Kaufman v. Kaufman, the Second Department, in citing the important public policy underlying DRL § 237(a), the disparity in the parties' respective incomes, the already contentious nature of that matrimonial litigation, and the resulting likelihood that the litigation in that matter will be protracted, modified and increased supreme court's award of counsel fees from [*13]$25,000.00 to $75,000.00. Kaufman v. Kaufman, 131 AD3d 939 (2d Dept. 2015). In Guzzo v. Guzzo, the Second Department, in citing, inter alia, the significant income disparity between the parties, modified supreme court's award of counsel fees from $35,000.00 to $100,000.00. Guzzo v. Guzzo, 110 AD3d 765 (2d Dept. 2013). In Tomassetti v. Tomasetti, the Second Department, citing, inter alia, the significant disparity between the financial circumstances of the parties, modified supreme court's award of counsel fees from $165,000.00 to $370,000.00. Tomasetti v. Tomasetti, 194 AD3d 882 (2d Dept. 2021). In Cohen v. Cohen, the First Department affirmed an award of interim counsel fees in the amount of $600,000.00, writing that the factors considered were, inter alia, the scope and complexity of the financial issues presented, the parties' assets and liabilities, and the fact that the husband therein was the monied spouse as contemplated by Domestic Relations Law 237(a). Cohen v. Cohen, 209 AD3d 405 (1st Dept. 2022).
The Court also notes that it has the authority to award prospective counsel fees. See Avedon v. Avedon, 270 AD2d 65 (1st Dept. 2000) (writing that plaintiff's application for prospective counsel fees, however, should have been granted in view of the respective financial condition of the parties and the additional discovery and support hearing directed by the trial court). Additionally, the Court also notes that an award of counsel fees pursuant to Domestic Relations Law § 237(a) is a matter within the sound discretion of the trial court, and the issue is controlled by the equities and circumstances of each particular case. Vistocco v. Jardine, 116 AD3d 842 (2d Dept. 2014). In exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions. DeCabrera v. Cabrera-Rosete, 70 NY2d 879 (1987). Furthermore, the court may also consider whether either party has engaged in conduct or taken positions resulting in a delay of the proceedings or unnecessary litigation. Ciampa v. Ciampa, 47 AD3d 745 (2008). The Appellate Divisions have also made clear that a spouse should not have to deplete his or her assets in order to have legal representation comparable to that of the other spouse. See e.g. and see generally Lennox v. Weberman, 109 AD3d 703 (1st Dept. 2013).
Here, the Court has considered the Defendant's income as reported on her income tax returns from 2018 through 2021 which are appended to her moving papers. The Court draws a negative inference against the Plaintiff for his failure to file a sworn Statement of Net Worth and for his failure to file proof of his income. Critically, the Plaintiff also fails to represent what his income is in his own opposing Affidavit. The Court therefore, for the purposes of this application, deems the Plaintiff to be the monied spouse, giving rise to the presumption that counsel fees should be awarded to the Defendant. The Court has also considered the Plaintiff's conduct with respect to his testimony at the Inquest regarding each party being self-supporting and there being no marital assets to divide concomitantly with his failure to provide proof of his income and a sworn Statement of Net Worth on this application to support those claims. The Court finds that this conduct has, to some degree, unnecessarily prolonged this litigation and has, in fact, created additional litigation. The Court finds that this conduct warrants an award of counsel fees. Additionally, DRL § 237(a) provides in part:
Both parties to the action or proceeding and their respective attorneys, shall file an affidavit with the court detailing the financial agreement between the party and the attorney. Such affidavit shall include the amount of any retainer, the amounts paid and still owing [*14]thereunder, the hourly amount charged by the attorney, the amounts paid, or to be paid, any experts, and any additional costs, disbursements or expenses. (emphasis added).
The Plaintiff does not disclose what he has paid to his current counsel in his Affidavit. He does not append his retainer agreement with his counsel and he does not append his billing statements with his counsel. The Court, on this application relative to counsel fees, draws an adverse inference against the Plaintiff in this respect. Accordingly, based upon the disparity in the parties' respective incomes as found herein, the prevailing case-law and controlling statutes, the facts of this case, the Defendant's Statement of Net Worth, a review of the Defendant's retainer agreement and billing statements, and the nature of this litigation, it is hereby:
ORDERED, that Branch (c) of the Defendant's Order to Show Cause dated December 4, 2023 be and the same is hereby GRANTED TO THE EXTENT that the Plaintiff shall pay directly to the Defendant's counsel, VICTOR MEVORAH, ESQ., the sum of $5,000.00, within thirty (30) days of the date of service of the within Decision and Order with Notice of Entry. The award is made without prejudice to further applications for additional sums as is necessary at the time of trial or sooner. See Ritter v. Ritter, 135 AD2d 421 (1st Dept. 1987); Jorgensen v. Jorgensen, 86 AD2d 861 (2nd Dept. 1982); and it is further
ORDERED, that upon the failure of Plaintiff to pay the Defendant's counsel as set forth herein above, the Defendant's counsel may file an Affidavit of Non-Compliance with the Clerk of the County, who shall enter a judgment, with statutory interest thereon as of the date of this Decision and Order, in favor of VICTOR MEVORAH, ESQ., the attorney for the Defendant, and against the Plaintiff, W. G. G., without further proceedings.
MISCELLANEOUS
In light of the Court's vacatur of the Defendant's default, it is hereby:
ORDERED, that this matter be and is hereby restored to the Court's calendar (see generally 22 NYCRR § 208.14); and it is further
ORDERED, that the Clerk is hereby directed to restore this matter as an active matter on the Court's calendar; and it is further
ORDERED, that the temporary stay granted in the Defendant's Order to Show Cause dated December 4, 2023 be and the same is hereby VACATED and DISSOLVED, and of no further force and effect; and it is further
ORDERED, that all parties, and counsel, shall appear before the undersigned Justice in the Supreme Court, Nassau County, at the Matrimonial Center in IAS/Matrimonial Part 11, on March 28, 2024 at 9:30 a.m. for a Preliminary Conference, which date shall not be adjourned, absent just cause.
Any other relief requested not specifically addressed herewith is hereby DENIED.
This constitutes the DECISION AND ORDER of this Court.
Mineola, New York
March 6, 2024
E N T E R :
[*15]Hon. Edmund M. Dane, J.S.C.

Footnotes

Footnote 1:The Affidavit(s) of Service of all of these documents are appended to the Defendant's moving papers as Exhibit "B".

Footnote 2:Those letters are not appended to the Defendant's opposition papers.

Footnote 3:See J. S.-G. Affidavit ¶ 3 [bold in original].

Footnote 4:See NYSCEF Document No.: 31.

Footnote 5:In the State of New Hampshire.

Footnote 6:There is no indication in this Record that the Plaintiff's son ever appeared the guardianship appointment. Likewise, their Record is barren of any proof that the guardianship appointment has been terminated, altered, nullified, stayed and/or dissolved by court order. The guardianship appointment also contains no expiration date.

Footnote 7:See generally Kolchins v. Evolution Mkts., Inc., 128 AD3d 47 (1st Dept. 2015) (an enforceable agreement requires the plaintiff to establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound).

Footnote 8:See generally Horse-Shoe Capital v. American Tower Corp., 30 Misc 3d 1220(A) (Supreme Court New York County 2011) (litigation is defined as the process of pursuing a lawsuit and lawsuit is defined as any proceeding by a party or parties against another in a court of law).

Footnote 9:See Affidavit of W. G. ¶ 2. See NYSCEF Document No.: 68.

Footnote 10:Notably, his intended duration of stay was also prior to the commencement of this divorce action.

Footnote 11:The date of commencement of the matrimonial action was February 3, 2023.